# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

)
NBC 7 SAN DIEGO, et al.,                           )
                                                   )
                            Plaintiffs,            )
                                                   )
            v.                                     )        Civil Action No. 19-1146 (RBW)
                                                   )
UNITED STATES DEPARTMENT                            )
OF HOMELAND SECURITY, et al.,                       )
                                                   )
                            Defendants.            )
---                                                )

## MEMORANDUM OPINION

The plaintiffs, NBC 7 San Diego ("NBC 7"), Tom Jones, and the Reporters Committee

for Freedom of the Press (the "RCFP"), bring this civil action against the defendants, the United

States Department of Homeland Security ("DHS"), the United States Customs and Border

Protection ("CBP"), the United States Citizenship and Immigration Services ("USCIS"), and the

United States Immigration and Customs Enforcement ("ICE"), pursuant to the Freedom of

Information Act (the "FOIA"), 5 U.S.C. § 552. See Complaint ("Compl.") ¶ 1, ECF No. 1.

Currently pending before the Court are (1) the DHS's motion for summary judgment and the

CBP's and the USCIS's motion for partial summary judgment, see Defendant U.S. Department

of Homeland Security's Motion for Summary Judgment and Defendants U.S. Customs and

Border Protection's and U.S. Citizenship and Immigration Services' Motion for Partial Summary

Judgment ("Defs.' Mot." or the "defendants' motion"), ECF No. 22;[1] and (2) the plaintiffs'

---

[1] On April 20, 2020, defendants CBP and USCIS filed their motion for partial summary judgment. See Defendant
U.S. Department of Homeland Security's Motion for Summary Judgment and Defendants U.S. Customs and Border
Protection's and U.S. Citizenship and Immigration Services' Motion for Partial Summary Judgment at 1, ECF No.
22. On that same date, defendant DHS filed its motion for summary judgment. See Defendant U.S. Department of
Homeland Security's Motion for Summary Judgment and Defendants U.S. Customs and Border Protection's and
U.S. Citizenship and Immigration Services' Motion for Partial Summary Judgment at 1, ECF No. 23. Although two

(continued . . .)

cross-motion for partial summary judgment, <u>see</u> Plaintiffs' Cross-Motion for Partial Summary Judgment ("Pls.' Mot." or the "plaintiffs' motion"), ECF No. 24.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must (1) deny in part and deny without prejudice in part the defendants' motion, and (2) grant in part and deny without prejudice in part the plaintiffs' motion.

## I.      BACKGROUND

This case concerns several FOIA requests submitted by the plaintiffs to the defendants in 2019 seeking records regarding "a 'secret database of activists, journalists, and social media influencers' related to a migrant caravan [allegedly] approaching the United States' border with Mexico."  Pls.' Facts ¶ 29; <u>see</u> Jones Decl. ¶ 3; <u>id.</u>, Exhibit ("Ex.") 2 (Jones et al., Source: Leaked Documents Show the U.S. Government Tracking Journalists and Immigration Advocates Through a Secret Database, NBC 7 (Mar. 6, 2019 3:57 p.m.) ("Jones Article")) at 6–16, ECF No.

---

(. . . continued)
separate motions were submitted to the Court, it appears that the motions are identical.  Accordingly, the Court will treat the filings as one motion and will consider ECF No. 22 as the operative motion.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."), ECF No. 22-1; (2) the Defendants' Statement of Undisputed Material Fact ("Defs.' Facts"), ECF No. 22-2; (3) the Declaration of Patrick A. Howard ("Howard Decl."), ECF No. 22-4; (4) the Declaration of James V.M.L. Holzer ("Holzer Decl."), ECF No. 22-5; (5) the plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment and Partial Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment ("Pls.' Mem."), ECF No. 24-1; (6) the Plaintiffs' Combined Statement of Material Facts as to Which There Is No Genuine Issue and Response to Defendants' Statement of Material Facts ("Pls.' Facts"), ECF No. 24-2; (7) the Declaration of Adam A. Marshall ("Marshall Decl."), ECF No. 24-3; (8) the Declaration of Tom Jones ("Jones Decl."), ECF No. 24-4; (9) the Defendants' Combined Reply in Support of their Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Defs.' Reply"), ECF No. 26; (10) the defendants' Amended Statement of Undisputed Material Fact ("Defs.' Am. Facts"), ECF No. 26-1; (11) the Declaration of Jill A. Eggleston ("Eggleston Decl."), ECF No. 26-2; (12) the Supplemental Declaration of Patrick A. Howard ("2d Howard Decl."), ECF No. 26-3; (13) the Second Declaration of James V.M.L. Holzer ("2d Holzer Decl."), ECF No. 26-4; (14) the Defendants' Response to Plaintiffs' Combined Statement of Material Facts as to Which There Is No Genuine Issue ("Defs.' Resp. to Pls.' Facts"), ECF No. 26-5; (15) the plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment ("Pls.' Reply"), ECF No. 29; and (16) the Plaintiffs' Response to Defendants' Amended Statement of Undisputed Material Fact ("Pls.' Resp. to Defs.' Am. Facts"), ECF No. 29-1.

24-4.  The Court will discuss the requests at issue in the motions currently before the Court,

before turning to the defendants' searches and the procedural posture of the case.

## A.      NBC 7's Request to the CBP

"On or about March 12, 2019," Jones, an NBC reporter, "submitted a FOIA request to

[the] CBP on behalf of himself and [ ] NBC 7[.]"  Defs.' Facts ¶ 1; see Pls.' Facts ¶ 1.  The

request contained four items, see Defs.' Facts ¶ 2; Pls.' Facts ¶¶ 2.a–2.d, and the two that follow

are at issue in the parties' motions.  "Item 3" requested:

> Emails, memos[,] or directives discussing the creation and use of a SharePoint
> application titled "ILU[-]OASISS-OMEGA[3] San Diego Sector, San Diego
> Sector Foreign Operations Branch, Migrant Caravan FY-2019, Suspected
> Organizers, Coordinators, Instigators and Media" from September 1, 2018, and
> December 31, 2018.  This is a list of targets that were identified for secondary
> screening purposes, as well as targets where alerts were placed on the individuals'
> passports.

Defs.' Facts ¶ 2(c); see Pls.' Facts ¶ 2.c.  "Item 4" requested "[e]mails shared between the 'San

Diego Caravan Working Group' related to the 'ILU-OASISS-OMEGA' operation monitoring the

San Diego caravan."  Defs.' Facts ¶ 2(d); see Pls.' Facts ¶ 2.d.

## B.      The RCFP's Request to the USCIS, CBP, and DHS

"On or about March 20, 2019," the RCFP "submitted a FOIA request to" the USCIS, the

CBP, and the DHS.  Defs.' Facts ¶ 3; see Pls.' Facts ¶ 3.  The RCFP's request contained twelve

items, see Defs.' Facts ¶ 4; Pls.' Facts ¶¶ 4.a–4.l, and the four that follow are at issue in the

---

[3] This term is referred to inconsistently throughout the defendants' filings.  Compare Defs.' Facts ¶ 9 ("[The] CBP
has conducted searches for records potentially responsive to Items 3 and 4 of the NBC 7 [r]equest and Item 9 of the
RCFP [r]equest, all of which request email records related to the term: "ILU-OASISS-OMEGA."), with id. ¶ 10
("[The] CBP conducted an electronic keyword search of all CBP email accounts for records that contain the term
'ILU-OASISS-OMEGA[.]'").  However, the plaintiffs' FOIA requests spell the term as "ILU-OASISS-OMEGA[.]"
Compl., Ex. 2 (FOIA Request ("NBC 7's FOIA Request")) at 2, ECF No. 1-5; id., Ex. 6 (FOIA Request ("RCFP
FOIA Request")) at 6, ECF No. 1-9; see also Pls.' Facts ¶ 10 n.3 ("Defendants' reference to the term 'ILU-OASISS-
OMEGA' in their [Statement of Undisputed Material Fact] appears to be a typographical error.").  Accordingly, the
Court will refer to the term throughout this Memorandum Opinion in a manner consistent with the plaintiffs' FOIA
requests, i.e., as "ILU-OASISS-OMEGA[.]"

parties' motions. "Item 9" requested "[a]ll emails, memoranda, or other forms of written or electronic communication, from January 1, 2017[,] to present, that mention or reference 'ILU-OASISS-OMEGA' <u>and</u> 'media' or 'reporter' or 'journalist[.]'" Defs.' Facts ¶ 4(i) (emphasis in original); <u>see</u> Pls.' Facts ¶ 4.i. "Item 10" requested:

> All emails to, from, copying, or blind copying any email address ending in ".eop.gov[,]"[] from January 1, 2017[,] to present, that contain "media" or "reporter" or "journalist" <u>and</u> any of the following terms or phrases:
>
> > [i.] "caravan"
> >
> > [ii.] "migrant caravan"
> >
> > [iii]. "southern border"
> >
> > [iv.] "Mexican border"
> >
> > [v.] "migrants"
> >
> > [vi.] "refugees[.]"

Defs.' Facts ¶ 4(j) (emphasis in original); <u>see</u> Pls.' Facts ¶ 4.j. "Item 11" requested "[a]ll emails to, from, copying, or blind copying any email address ending in '.fbi.gov[,]'[] from January 1, 2017[,] to present, that mention or refer to the application(s)/database(s) described in the NBC 7 article and accompanying screenshots/documents[.]" Defs.' Facts ¶ 4(k); <u>see</u> Pls.' Facts ¶ 4.k.

Finally, "Item 12" requested:

> All emails, memoranda, or other forms of written or electronic communication, from January 1, 2017, to present, that include "media" or "reporters" or "journalist" <u>and</u> any of the following terms:
>
> > [i.] "screening"
> >
> > [ii.] "scrutiny"
> >
> > [iii.] "searches"
> >
> > [iv.] "secondary"
> >
> > [v.] "passport[.]"

Defs.' Facts ¶ 4(l) (emphasis in original); see Pls.' Facts ¶ 4.l.

## C.    The Defendants' Searches

### 1.    The USCIS's Search

The "USCIS conducted a search for records potentially responsive to Item 10" of the RCFP's request.  Defs.' Facts ¶ 5; see Pls.' Facts ¶ 5 (not disputing that the "USCIS conducted a search for records responsive to [I]tem 10 of the RCFP['s r]equest[,]" but disputing that the "search was for records only 'potentially' responsive to [I]tem 10").  The USCIS searched the records of "certain custodians who comprise [the USCIS's] senior leadership[,]" Defs.' Facts ¶ 5; see Pls.' Facts ¶ 5 (neither disputing this fact nor explicitly stating that it is undisputed), "for documents that (a) hit on the terms '[m]edia' or 'reporter' or 'journalist' and (b) hit on any of the terms: 'Caravan,' 'Migrant caravan,' 'Southern border,' 'Mexican border,' 'Migrants,' or 'Refugees' and (c) contained an email address ending of '.eop.gov[,]'" Defs.' Facts ¶ 6; see Pls.' Facts ¶ 6.  "Using these search parameters, [the] USCIS identified 1,371 pages of potentially responsive records[,]" which USCIS staff "reviewed . . . and determined . . . were not responsive to the [RCFP's] FOIA request."  Defs.' Facts ¶ 7; see Pls.' Facts ¶ 7 (not disputing that the "USCIS identified 1,371 pages of records[,]" but disputing that the pages were only "potentially responsive" and further that the pages were actually "not responsive to the FOIA request").  "On January 22, 2020, [the] USCIS informed [the] RCFP that it did not have any responsive materials to Item 10, and provided an Appendix with general descriptions of the pages" and an explanation that "[i]t is fairly clear from these general descriptions that these pages are not responsive[.]" Defs.' Facts ¶ 8; see Pls.' Facts ¶ 8 (not disputing that the "USCIS communicated with [the] RCFP via letter on January 22, 2020[,] regarding [I]tem 10 of [the] RCFP's request[,]" but disputing that the USCIS did "not have any responsive materials to Item 10").

## 2.  The CBP's Searches

The "CBP [ ] conducted searches for records potentially responsive to Items 3 and 4 of [ ] NBC 7['s r]equest and Item 9 of the RCFP['s r]equest[.]"  Defs.' Facts ¶ 9; <u>see</u> Pls.' Facts ¶ 9. Specifically, the "CBP conducted an electronic keyword search of all CBP email accounts for records that contain the term 'ILU-OAS[]IS[S]-OMEGA' and were dated January 1, 2017, through approximately August 28, 2019."  Defs.' Facts ¶ 10; <u>see</u> Pls.' Facts ¶ 10.  "Due to the manner in which [the] CBP's search tool operates, the electronic keyword search not only returned records that contain[ed] the entire term 'ILU-OAS[]IS[S]-OMEGA' but also some records that contain[ed] each of those terms independently (<u>i.e.</u>, 'ILU,' 'OAS[]IS[S], and 'OMEGA' separately)."  Defs.' Facts ¶ 10 (underline added); <u>see</u> Pls.' Facts ¶ 10.  The CBP's search "returned approximately 1,900 records[,]" and the "CBP's FOIA office began manually reviewing the returned records for responsiveness to the requests[,]" Defs.' Facts ¶ 11; <u>see</u> Pls.' Facts ¶ 11, which it "interpreted . . . as seeking records maintained by [the] CBP that relate to [its] interaction with and treatment of the media while executing [its] law enforcement and border security responsibilities," Defs.' Facts ¶ 12; <u>see</u> Pls.' Facts ¶ 12.  "The CBP FOIA office did not interpret the requests as encompassing records that might be generated in the course of processing the request and that would not exist but for [the p]laintiffs' submission[,]" Defs.' Facts ¶ 13; <u>see</u> Pls.' Facts ¶ 13, which is the "CBP's standard practice[,]" Defs.' Facts ¶ 14; <u>see</u> Pls.' Facts ¶ 14.  The plaintiffs have since "limited the scope of their FOIA requests to [the] CBP to exclude records that are a direct result of the processing of the instant FOIA requests."  Pls.' Facts ¶ 14; <u>see</u> Defs.' Resp. to Pls.' Facts ¶ 55.

"As of April 16, 2020, [the] CBP [ ] had made five releases[,]" processing "a total of 2,459 pages[ that ]were initially identified through [its] electronic keyword search described in paragraph [ten] of the defendants' [Statement of Undisputed Material Fact.]"  Defs.' Am. Facts

¶ 16; see Pls.' Resp. to Defs.' Am. Facts ¶ 16. "Subsequent analysis of the 4,458 pages of email records that CBP processed and determined to be non-responsive to [the p]laintiffs' requests found that approximately 3,879 pages were determined to be non-responsive because they relate[d] to the processing of [the p]laintiffs' FOIA requests or this litigation[,]" and "[t]he remaining 579 pages of email records were found to be non-responsive because they do not contain all the search terms identified in [I]tem 9 of [the] RCFP['s request, i.e.,] 'ILU-OASISS-OMEGA' and 'media' or 'reporter' or 'journalist[,]'[] and they do not fall within the scope of the remaining categories of [the p]laintiffs' FOIA requests." Defs.' Am. Facts ¶ 16; see Pls.' Resp. to Defs.' Am. Facts ¶ 16 (disputing "that any of the records [the CBP] located in response to the [RCFP's] FOIA request are 'non-responsive'" and further disputing "that the 'remaining 579 pages of email records' are 'non-responsive because they do not contain all the search terms identified in [I]tem 9 of [the] RCFP['s request]'"). Specifically, according to the CBP, "other than records relating to the processing of [the p]laintiffs' FOIA requests and this litigation, none of the records identified in [the] CBP's keyword search contained all of the terms identified in [I]tem[] 9 of [the] RCFP's FOIA request." Defs.' Am. Facts ¶ 16; see Pls.' Resp. to Defs.' Am. Facts ¶ 16.

### 3. The DHS's Search

The "DHS received [ ] NBC[ ]7['s r]equest but, because it addressed records maintained by [the] CBP, [it took] no action on the [ ] [r]equest except that[,] on March 18, 2019, [it] referred the [ ] [r]equest to its component agencies[, the] CBP and [ICE] for direct response to the" plaintiffs. Defs.' Facts ¶ 17; see Pls.' Facts ¶ 17. Although the "DHS ha[d] no record of receiving the RCFP['s] [ ] [r]equest," it "agreed to process that request as though [it] had received [the request] by July 12, 2019[,] a date agreed upon by the parties[.]" Defs.' Facts ¶ 18; see Pls.' Facts ¶ 18 (disputing this fact in part because the "RCFP submitted its request to [the]

DHS on March 20, 2019[,] by fax and received a transmission confirmation the same day[,]" but

noting that the dispute is "[i]mmaterial as [the] DHS agreed to process the request").  "By

agreement of the parties, [the] DHS limited its search to Items 9, 10, 11[,] and 12 of the

RCFP['s] [r]equest[,]" Defs.' Facts ¶ 19; see Pls.' Facts ¶ 19, and "worked with [the p]laintiffs

on the scope and terms used for the search[,]" Defs.' Facts ¶ 20; see Pls.' Facts ¶ 20.

Specifically,

> [t]he search tasker included the following search terms:
>
> a.  SEARCH 1: "ILU-OASISS-OMEGA" and "media" or "reporter" or "journalist."
>
> b.  SEARCH 2: "media" or "reporter" or "journalist" and "caravan" or "migrant caravan" or "southern border" or ["]Mexican border" or "migrants" or "refugees."
>
> c.  SEARCH 3: "application" or "database" and" NBC7" and "screenshot."
>
> d.  SEARCH 4: "media" or "reporters" or "journalist" and "screening" or "scrutiny" or "searches" or "secondary" or "passport."

Defs.' Facts ¶ 20; see Pls.' Facts ¶ 20.  The parties "agreed to exclude news articles and

clippings" from the plaintiffs' document requests, Defs.' Facts ¶ 20; see Pls.' Facts ¶ 20, and for

the "DHS [to] search[] the custodian accounts of: (1) the Office of the Secretary, (2) [the] Office

of the Deputy Secretary, (3) [the] Office of Strategy, Policy, and Plans (formerly Policy), as well

as (4) the Office of Public Affairs[,]" Defs.' Facts ¶ 21; see Pls.' Facts ¶ 21.  "On February 24,

2020, [the] DHS completed its search and determined that the search did not locate any

responsive records."  Defs.' Facts ¶ 23; see Pls.' Facts ¶ 23 (disputing that the records were

actually non-responsive).  According to the DHS, it "made this determination after employing a

three-step process to evaluate [the] data returned from [the] searches[,]" which "involve[d] the

uploading of data retrieved as a result of the search tasker, deduplication and review to identify

potentially responsive records, and a line-by-line review of the potentially responsive documents to determine actual responsiveness and applicability of exemptions."  Defs.' Facts ¶ 24; see Pls.' Facts ¶ 24 (not disputing that the "DHS 'employed a three-step process[,]'" but disputing that "this process 'determine[d] actual responsiveness'").

**D.      Procedural History**

On April 22, 2019, NBC 7, Jones, and the RCFP filed their Complaint in this case, alleging that the defendants had "unlawfully withheld agency records that were requested by [the p]laintiffs[.]"  Compl. ¶ 2.  From June 7, 2019, to February 13, 2020, the parties filed joint status reports, advising the Court as to the status of their ongoing discussions and the defendants' searches and processing of responsive records.  See Joint Status Report (June 7, 2019), ECF No. 8; Joint Status Report (July 8, 2019), ECF No. 10; Joint Status Report (July 22, 2019), ECF No. 12; Joint Status Report (Aug. 28, 2019), ECF No. 13; Joint Status Report (Oct. 25, 2019), ECF No. 14; Joint Status Report (Dec. 13, 2019), ECF No. 15; Joint Status Report (Feb. 13, 2020), ECF No. 18.  After the parties advised the Court that they had a dispute, the Court set a briefing schedule for motions for partial summary judgment.  See Order at 1 (Feb. 14, 2020), ECF No. 19.

On April 20, 2020, defendants USCIS, CBP, and DHS filed their motion, see Defs.' Mot. at 1, and, on May 18, 2020, the plaintiffs filed their cross-motion, see Pls.' Mot. at 2.  On June 8, 2020, the defendants filed their combined reply in support of their motion and opposition to the plaintiffs' motion, see Defs.' Reply at 1, and, on June 29, 2020, the plaintiffs filed their reply in support of their motion, see Pls.' Reply at 1.[4]

---

[4] Since the filing of the parties' motions, they have continued to file joint status reports advising the Court as to the status of the defendants' searches for and processing of responsive records that are not at issue in the parties' motions.  See, e.g., Twenty-Eighth Joint Status Report at 1–3 (Oct. 26, 2022), ECF No. 56.

## II.      STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S.

Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014).  The "FOIA requires federal agencies to

disclose, upon request, broad classes of agency records unless the records are covered by the

statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833

(D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of

Just., 863 F.2d 96, 101 (D.C. Cir. 1988) ("[The] FOIA is to be interpreted with a presumption

favoring disclosure and exemptions are to be construed narrowly.").  In a FOIA action, the

defendant agency has "[the] burden of demonstrating that the withheld documents are exempt

from disclosure[.]"  Boyd v. U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007).  This

burden "cannot be met by mere conclusory statements."  Wash. Post Co., 863 F.2d at 101.

Rather, "[t]he agency may meet this burden by filing affidavits describing the material withheld

and the manner in which it falls within the exemption claimed[,]" King v. U.S. Dep't of Just.,

830 F.2d 210, 217 (D.C. Cir. 1987), and by "show[ing] how release of the particular material

would have the adverse consequence that the [FOIA] seeks to guard against[,]" Wash. Post Co.,

863 F.2d at 101.

Moreover, courts will grant summary judgment to the government in a FOIA case only if

the agency can prove "that it has fully discharged its obligations under the FOIA, after the

underlying facts and the inferences to be drawn from them are construed in the light most

favorable to the FOIA requester."  Friends of Blackwater v. U.S. Dep't of Interior,

391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury,

10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of

documents under the FOIA, "an agency is entitled to summary judgment if no material facts are

in dispute and if it demonstrates 'that each document that falls within the class requested either

has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against

Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency,

607 F.2d 339, 352 (D.C. Cir. 1978)).  "Even when [a] requester files a motion for summary

judgment, the [g]overnment 'ultimately has the onus of proving that the [responsive] documents

are exempt from disclosure[,]'" and "[t]he burden upon the requester is merely 'to establish the

absence of material factual issues before a summary disposition of the case could permissibly

occur.'"  Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C.

Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir.

1978)) (alterations omitted).

### III.   ANALYSIS

The defendants move for (1) summary judgment as to the DHS's response to the

plaintiffs' FOIA requests; (2) partial summary judgment as to the USCIS's response to "Item 10

of the RCFP['s r]equest[;]" and (3) partial summary judgment as to the CBP's "search for

records responsive to Item 9 of the RCFP['s r]equest and Items 3 and 4 of [ ] NBC 7['s

r]equest[.]"  Defs.' Mem. at 1.  In response, the plaintiffs move for partial summary judgment

"with respect to the inadequacy of [the] CBP's search for records and [the d]efendants'

determinations of non-responsiveness[.]"  Pls.' Mem. at 3.  For the following reasons, the Court

concludes that the defendants are not entitled to summary judgment regarding the searches at

issue.

An agency "fulfills its [search] obligations under [the] FOIA if it can demonstrate beyond

material doubt that its search was reasonably calculated to uncover all relevant documents."

Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011)

(internal quotation marks omitted).  Courts assess the adequacy of a search "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).  A FOIA "search" means a "review, manually or by automated means, [of] agency records for the purpose of locating those records which are responsive to a request."  5 U.S.C. § 552(a)(3)(D).  "In order to obtain summary judg[]ment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  An agency "may [only be] award[ed] summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are 'relatively detailed and non-conclusory[.]'"  Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (quoting SafeCard Servs., Inc. v. Secs. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Although "[a]n agency may decide to limit the scope of an ambiguous request as long as the narrowed scope is a reasonable interpretation of what the request seeks[,]" Wilson v. U.S. Dep't of Transp., 730 F. Supp. 2d 140, 154 (D.D.C. 2010), the agency "has a duty to construe [the] FOIA request liberally[,]" Nation Mag., Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995), and is "'bound to read it as drafted[,] not as 'agency officials . . . might wish it was drafted,'" Nat'l Sec. Couns. v. Cent. Intel. Agency, 931 F. Supp. 2d 77, 101 (D.D.C. 2013) (quoting Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984)) (second alteration in original).  Thus, "cases within this Circuit have often disapproved of agencies narrowing the scope of a FOIA request to exclude materials reasonably within the description provided by the requester."  Id. at 102.  For instance, where a request contains different layers of specificity, an

agency should take the "broader reading" that the request is "reasonably susceptible" to, since "[t]he drafter of a FOIA request might reasonably [be] seek[ing] all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof." LaCedra v. Exec. Off. for U.S. Att'ys, 317 F.3d 345, 348 (D.C. Cir. 2003).

The issue for the Court to resolve is narrow, namely: whether the defendants have complied with their obligations under the FOIA when they determined that records located by electronic keyword-based searches using "various search terms" were not responsive to the plaintiffs' requests. Defs.' Mem. at 2; see Pls.' Mem. at 1 (arguing that the "[d]efendants searched for and located records exactly matching the descriptions provided in [the plaintiffs'] requests[, y]et rather than simply process and release those records, [the d]efendants inexplicably deemed them 'non-responsive'"). The Court will discuss the adequacy of each agency's searches and non-responsiveness determinations in turn, before addressing the defendants' arguments on these matters.

## A.     The CBP's Searches

The CBP moves for partial summary judgment as to its searches for records "responsive to Items 3 [and] 4 of NBC 7's [r]equest [and] Item 9 of [the] RCFP's [r]equest[,]" Defs.' Reply at 8, arguing that it complied with the FOIA when it "conducted an electronic keyword search of all CBP email accounts for records that contain the term 'ILU-OAS[]IS[S]-OMEGA' and were dated January 1, 2017, through approximately August 28, 2019[,]" Defs.' Mem. at 5–6, and "found these records to be non-responsive," id. at 6. In response, the plaintiffs argue that the "CBP has failed to" "'offer[] [a] non-conclusory justification for each [ ] classification as non-responsive.'" Pls.' Mem. at 23 (quoting Shapiro v. Dep't of Just., 944 F.3d 940, 943 (D.C. Cir. 2019)). For the following reasons, the Court concludes that it must deny the CBP's motion

and grant the plaintiffs' motion as to Item 9 of the RCFP's request; and deny without prejudice

the CBP's motion and the plaintiffs' motion as to Items 3 and 4 of NBC 7's request.

As noted above, see supra Sections I.A–B, the plaintiffs submitted three requests to the

CBP that are at issue: Items 3 and 4 of NBC 7's request and Item 9 of the RCFP's request.  See

Howard Decl. ¶ 8.  As discussed above, Item 3 of NBC 7's request sought

> [e]mails, memos[,] or directives discussing the creation and use of a SharePoint
> application titled "ILU[-]OASISS-OMEGA San Diego Sector, San Diego Sector
> Foreign Operations Branch, Migrant Caravan FY-2019, Suspected Organizers,
> Coordinators, Instigators and Media" from September 1, 2018, and December 31,
> 2018.   This is a list of targets that were identified for secondary screening
> purposes, as well as targets where alerts were placed on the individuals' passports.

Defs.' Facts ¶ 2(c); see Pls.' Facts ¶ 2.c.  Item 4 of NBC 7's request sought "[e]mails shared

between the 'San Diego Caravan Working Group' related to the 'ILU-OASISS-OMEGA'

operation monitoring the San Diego caravan."  Defs.' Facts ¶ 2(d); see Pls.' Facts ¶ 2.d.  And,

Item 9 of the RCFP's request sought "[a]ll emails, memoranda, or other forms of written or

electronic communication, from January 1, 2017[,] to present, that mention or reference

'ILU-OASISS-OMEGA' and 'media' or 'reporter' or 'journalist[.]'"  Defs.' Facts ¶ 4(i); see

Pls.' Facts ¶ 4.i.

According to the search process described by the CBP in the initial and Second Howard

Declarations, it determined that "Items 3 and 4 of [ ] NBC['s r]equest and [I]tem 9 of the

RCFP['s r]equest each [sought] email records relating to the term 'ILU-OASISS-OMEGA.'"

Howard Decl. ¶ 9.  "To identify a universe of potentially responsive email records, [the] CBP

conducted an electronic keyword search of all CBP email accounts for records that contain[ed]

the term 'ILU-OAS[]IS[S]-OMEGA' and [we]re dated January 1, 2017, through approximately

August 28, 2019."  Id.  "Th[is] electronic keyword search . . . returned approximately 1,900

records," id. ¶ 10, which, "[d]ue to the manner in which [the] CBP's search tool operates,"

included "not only [ ] records that contain[ed] the entire term 'ILU-OAS[]IS[S]-OMEGA[,]' but also [ ] some records that contain[ed] each of those terms independently (i.e., 'ILU,' 'OAS[]IS[S],' and 'OMEGA' separately)[,]" id. ¶ 9 n.1 (underline added).  The CBP then began to "manually review[]" the records to "determine which records returned by the search, if any, [we]re responsive to the [plaintiffs'] request[s]."  Id. ¶ 10.  "For example, the records [we]re reviewed to determine if they relate to the subject matter described in the NBC 7 request, or to determine whether they contain the additional terms identified in [I]tem 9 of the RCFP['s r]equest or otherwise relate to the underlying subject matter of the RCFP['s r]equest[.]"  Id.

According to the CBP, "[i]n this case, because the universe of records over which the searches were conducted extended to a date after [the] CBP received the FOIA requests, the electronic keyword search [that the] CBP conducted to identify [responsive] records . . . returned many email records that were created incidental to the process of" the FOIA requests "and the subsequent litigation."  Id. ¶ 13.  And, "the vast majority[5] of non-responsive email records processed to date by [the] CBP were determined to be non-responsive because they relate to the processing of [the p]laintiffs' FOIA requests and the subsequent litigation."  2d Howard Decl. ¶ 6.  In sum, the "CBP [ ] processed 4,458 pages of email records [determined to be] non-responsive[,]" of which "approximately 3,879 pages were determined to be non-responsive because they relate to the processing of [the p]laintiffs' FOIA requests or this litigation."  Id. ¶ 7.  "The remaining 579 pages of email records were found to be non-responsive because they

---

5 In the initial Howard Declaration, the CBP "conservatively estimated" the number of "email records that were created incidental to the processing of NBC 7's and [the] RCFP's FOIA requests and the subsequent litigation" to be "98 [percent,]" Howard Decl. ¶ 13, "based on a cursory review of the number of records reviewed between November 2019 and March 2020 and on [the declarant's] recollection of the nature of those records," 2d Howard Decl. ¶ 6.  Subsequently, the CBP "reviewed [the] records relating to the non-responsive email records in order to better understand the types and number of email records determined to be non-responsive[,]" id. ¶ 7, and amended the "percentage[] of records [that we]re non-responsive because they relate[d] to the processing of [the p]laintiffs' FOIA requests or this litigation [to be] 87 [percent,]" id.

do not contain all the search terms identified in [I]tem 9 of [the] RCFP['s request]

('ILU-OASISS-OMEGA' and 'media' or 'reporter' or 'journalist') and they do not fall within

the scope of the remaining categories of [the p]laintiffs' FOIA requests." Id. ¶ 8.  "In other

words, other than records related to the processing of [the p]laintiffs' FOIA requests and this

litigation, none of the records identified in [the] CBP's keyword search contained all of the terms

identified in [I]tem[] 9 of [the] RCFP's FOIA request." Id.

   The defendants argue that the "CBP developed a search that was reasonably calculated to

discover records responsive to" the plaintiffs' requests, and that, because "[t]he search term

('ILU-OAS[]IS[S]-OMEGA') made the search broader than each of the individual FOIA

[r]equest items[,]" the CBP appropriately "determin[ed their] responsiveness[.]"  Defs.' Mem. at

6–7.  In response, the plaintiffs argue that (1) the records returned by the CBP's searches are per

se responsive to Item 9 of the RCFP's request, which sought "emails . . . that mention or

reference 'ILU-OASISS-OMEGA' and 'media' or 'reporter' or 'journalist,'" because they were

identified in response to a keyword search for those terms, see Pls.' Mem. at 21–22; and (2) the

CBP has failed to offer any "explanation as to why it determined" that "the emails that [the] CBP

located that do not relate to the processing of [the plaintiffs'] requests or this litigation" were

"'non-responsive[,]'" id. at 23.  The Court will address each plaintiff's request submitted to the

CBP, in turn.

### 1.  The RCFP's Request

   Beginning with the RCFP's request, the defendants argue that the records processed in

response to this request were properly deemed non-responsive because the records "do not

contain all the search terms identified in [I]tem 9 of [the] RCFP['s request] ('ILU-OASISS-

OMEGA' and 'media' or 'reporter' or 'journalist')[.]"  2d Howard Decl. ¶ 8.  However, as the

plaintiffs correctly note in their reply, see Pls.' Reply at 9, this misconstrues the RCFP's request.

As discussed above, see supra Section I.B, the RCFP requested "emails . . . , from January 1, 2017[,] to present, that mention or reference 'ILU-OASISS-OMEGA' and 'media' or 'reporter' or 'journalist[.]'" Defs.' Facts ¶ 4(i) (emphases added); see Pls.' Facts ¶ 4.i. Therefore, regarding Item 9, responsive records (1) are emails, (2) dated "from January 1, 2017[,] to present[,]" (3) that contain both the word "ILU-OASISS-OMEGA" and one of the following three words: "media[,]" "reporter[,]" or "journalist[,]" Defs.' Facts ¶ 4(i)—i.e., the "subject of [the RCFP's] request is the entirety of each document that" fits these criteria, Shapiro v. Cent. Intel. Agency, 170 F. Supp. 3d 147, 154 (D.D.C. 2016) (emphasis in original).[6]

---

[6] In their reply, the defendants argue that Shapiro is inapplicable because (1) it "is [merely] persuasive authority" and thus "not binding on this Court[,]" Defs.' Reply at 4, and (2) it "did not decide whether [agencies] have discretion under [the] FOIA to determine that records [a]re not substantively responsive[,]" id. at 6.

As the defendants correctly note, see id. at 4, Shapiro is persuasive authority, as it was issued by another member of this Court, see 170 F. Supp. 3d at 147. In Shapiro, the Central Intelligence Agency "refus[ed] to process Shapiro's FOIA request" on the basis that "Shapiro had not exhausted his administrative remedies because his request did not 'reasonably describe' the records sought." Id. at 154. "The Court disagree[d], finding that Shapiro's request 'reasonably describe[d]' the records [Shapiro sought]," when Shapiro had requested "records in the [Central Intelligence Agency's ('ICIA's')] possession that 'mention[ed]' Nelson Mandela or his three listed aliases." Id. Because "the subject of Shapiro's request [wa]s the entirety of each document that mention[ed] Mandela, even if such references [we]re fleeting and tangential[,]" then "compliance should involve virtually no guesswork: A record is responsive if and only if it contains Mandela's name (or those of his three listed aliases) or any descriptor obviously referring to him." Id. (emphasis in original).

The Court finds Shapiro persuasive. Certainly, as the defendant correctly notes, see Defs.' Reply at 5, the posture in Shapiro was different from the posture in this case, because the CIA had moved to dismiss Shapiro's complaint, see Shapiro, 170 F. Supp. 3d at 154, whereas here the defendants seek either partial or full summary judgment. However, similar to Shapiro's request, in this case, Items 9, 10, and 12 of the RCFP's request seek records that "mention[,]" id., specific terms. See Defs.' Facts ¶¶ 4(i), (j), (l). And, just as the Court in Shapiro determined, "[a] record is responsive[,]" Shapiro, 170 F. Supp. 3d at 154, to Items 9, 10, and 12 if it contains the terms described in the RCFP's requests. Therefore, the Court concludes that Shapiro is persuasive authority supporting the Court's conclusion that records that "mention[,]" id., the terms in Items 9, 10, and 12 are responsive to the RCFP's requests.

To the extent that the defendant argues that Shapiro is inapposite because it "did not decide whether [agencies] have discretion under [the] FOIA to determine that records [a]re not substantively responsive[,]" Defs.' Reply at 6, as discussed infra, see infra Section III.D, the plaintiffs do not challenge whether, in general, agencies "have discretion under [the] FOIA to determine that records [a]re not substantively responsive[,]" id. Rather, the plaintiffs challenge the defendants' specific non-responsiveness determinations in this case, see, e.g., Pls.' Mem. at 1 (arguing that the "RCFP's requests sought, in part, records from a specified time frame containing specific words or phrases" and the "[d]efendants searched for and located records exactly matching the descriptions provided in [the] RCFP's requests[, y]et . . . inexplicably deemed them 'non-responsive'"), as well as the sufficiency of the defendants' explanations for their determinations, see, e.g., Pls.' Reply at 8 (arguing that the DHS did not offer a "non-conclusory justification for each ultimate classification as non-responsive" (emphasis in original)). Therefore, the fact that Shapiro "did not

(continued . . .)

However, the CBP determined that certain records were non-responsive because "they d[id] not contain all the search terms identified" by the RCFP.  2d Howard Decl. ¶ 8 (emphasis added).  This statement is ambiguous.  On the one hand, the phrase "all the search terms[,]" id., could be referring to the combination of search terms sought by the RCFP, i.e., "ILU-OASISS-OMEGA[,]" and either "media[,]" "reporter[,]" or "journalist[,]" Defs.' Facts ¶ 4(i).  On the other hand, "all the search terms" could just as well be referring to the entire list of terms in Item 9, i.e., "ILU-OASISS-OMEGA[,]" "media[,]" "reporter[,]" and "journalist[.]"  Id.

If the Second Howard Declaration's statement is intended to refer to the combination of search terms sought by the RCFP, in accordance with the first interpretation set forth by the Court in the previous paragraph, the Court concludes that it is a reasonable interpretation of the RCFP's request and that the CBP adequately explained that it deemed the records non-responsive because they did not fit the criteria in the RCFP's request.  However, if the Second Howard Declaration is stating that it deemed records non-responsive if they did not contain all four terms in Item 9, see Defs.' Facts ¶ 4(i) ("ILU-OASISS-OMEGA[,]" "media[,]" "reporter[,]" "journalist"), that is an unduly narrow interpretation of the RCFP's request.  As set forth above, the RCFP's request does not require the presence of all four terms, merely "ILU-OASISS-OMEGA[,]" and at least one of the following three terms: "media[,]" "reporter[,]" and "journalist[.]"  Id.  Thus, an interpretation that would require all four terms would not comport with the agency's "duty to construe a FOIA request liberally[,]" Nation Mag., 71 F.3d at 890.

---

(. . . continued)

decide whether [agencies generally] have discretion under [the] FOIA to determine that records [a]re not substantively responsive[,]" Defs.' Reply at 6, is irrelevant to its persuasiveness regarding the responsiveness of the records that mention the terms in Items 9, 10, and 12 of the RCFP's request.

Furthermore, the Item 9 request is clear and unambiguous, compare Kidder v. Fed. Bureau of Investigation, 517 F. Supp. 2d 17, 23–24 (D.D.C. 2007) (stating that a FOIA request for "[a]ll records concerning Amed Abu Ali" was "quite clear" because the plaintiff's request "s[ought] solely records pertaining to 'Ahmed Abu Ali'" and "d[id] not reference any of Mr. Abu Ali's aliases"), with Cole v. Copan, No. 19-cv-1182 (TSC), 2020 WL 7042814, at *4 (D.D.C. Nov. 30, 2020) (stating that "Cole's [ ] FOIA request s[eeking] 'the input data and the original analyses for the seated connection at column 79 [of 7 World Trade Center]'" was not "frame[d] . . . [with] sufficient particularity to reasonably suggest he wanted something other than the data that was input into the computer models[,]" such as "information that existed independent of the computer and the modelling" (internal quotation marks omitted)), and therefore, the CBP is not free to "limit the scope of" the request, Nat'l Sec. Couns., 931 F. Supp. 2d at 101 (internal quotation marks omitted).  See Wilson, 730 F. Supp. 2d at 154 ("An agency may decide to limit the scope of an ambiguous request as long as the narrowed scope is a reasonable interpretation of what the request seeks.").  Accordingly, the Court concludes that it must deny the CBP's motion for partial summary judgment and grant the plaintiffs' motion for partial summary judgment as to the CBP's search for records responsive to Item 9 of the RCFP's request.  Consequently, the CBP must process the records consistent with the RCFP's Item 9 request.

## 2. NBC 7's Request

The Court now turns to the request submitted to the CBP by NBC 7.  The plaintiffs argue that the CBP has failed to offer any "explanation as to why it determined" that "the emails that [the] CBP located that do not relate to the processing of [the plaintiffs'] requests or this litigation" were "non-responsive."  Pls.' Mem. at 23.  In response, the defendants argue that the CBP "has met its burden under [the] FOIA to conduct a reasonable search and release all

responsive, segregable, non-exempt email records." Defs.' Reply at 8. For the following

reasons, the Court agrees with the plaintiffs.

In response to the plaintiffs' argument, the CBP submitted an additional declaration

explaining its search. See generally 2d Howard Decl. Specifically, the additional declaration

states:

> 579 pages of email records were found to be non-responsive because they d[id]
> not contain all the search terms identified in [I]tem 9 of [the] RCFP['s request],
> and they d[id] not fall within the scope of the remaining categories of [the
> p]laintiffs' FOIA requests. In other words, other than records relating to the
> processing of [the p]laintiffs' FOIA requests and this litigation[, which the
> plaintiffs agreed were non-responsive], none of the records identified in [the]
> CBP's keyword search contained all of the terms identified in [I]tem[] 9 of [the]
> RCFP's FOIA request.

Id. ¶ 8.

The Court concludes that this explanation does not meet the agency's burden to provide a

"relatively detailed and non-conclusory" affidavit in support of its search. SafeCard Servs.,

926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. Cent. Intel. Agency, 692 F.2d 770, 771

(D.C. Cir. 1981)). Items 3 and 4 of NBC 7's request and Item 9 of the RCFP's request are not

substantively identical. Compare Defs.' Facts ¶ 2(c) (seeking, in Item 3 of NBC 7's request,

"[e]mails[] . . . discussing the creation and use of a SharePoint application titled 'ILU[-]OASISS-

OMEGA San Diego Sector, San Diego Sector Foreign Operations Branch, Migrant Caravan

FY-2019, Suspected Organizers, Coordinators, Instigators and Media' from September 1, 2018,

and December 31, 2018" (emphases added)), with id. ¶ 2(d) (seeking, in Item 4 of NBC 7's

request, "[e]mails shared between the 'San Diego Caravan Working Group' related to the 'ILU-

OASISS-OMEGA' operation monitoring the San Diego caravan" (emphasis added)), and id.

¶ 4(i) (seeking, in Item 9 of the RCFP's request, "[a]ll emails, memoranda, or other forms of

written or electronic communication, from January 1, 2017[,] to present, that mention or

reference 'ILU-OASISS-OMEGA' and 'media' or 'reporter' or 'journalist'" (emphases added)). Despite the difference between the requests, the pertinent paragraph of the Second Howard Declaration does not specifically mention NBC 7's request, see 2d Howard Decl. ¶ 8, and, furthermore, implies that all of the records that did not "contain[] all of the terms identified in [I]tem[] 9 of [the] RCFP's FOIA request" were deemed per se non-responsive, id., despite the fact that Items 3 and 4 of NBC 7's request were not limited to references to the terms in Item 9 of the RCFP's request, see Defs.' Facts ¶¶ 2(c)–(d), 4(i). Absent a "non-conclusory justification for each ultimate classification as non-responsive[,]" Shapiro, 944 F.3d at 943 (emphasis added), the Court cannot conclude that the CBP's search for records responsive to NBC 7's request was adequate.

Accordingly, the Court concludes that the CBP has not "demonstrate[d] beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild, 641 F.3d at 514. Consequently, the Court will deny without prejudice both the CBP's motion for partial summary judgment and the plaintiffs' motion for partial summary judgment as to the CBP's search for records responsive to Items 3 and 4 of NBC 7's request. If, taking into consideration the Court's rulings in this Memorandum Opinion, the CBP is able to provide the Court with a non-conclusory explanation of its reasons for deeming non-responsive the records located during the search for Items 3 and 4, it may renew its motion for summary judgment on that ground. If the CBP is unable to do so in a manner that is consistent with the Court's rulings, it must deem the records responsive and process them. The CBP may not again seek summary judgment regarding this issue unless it (1) properly construes the plaintiffs' requests in accordance with the Court's rulings; (2) reviews the records located by its search for their responsiveness to the plaintiffs' requests; and (3) is able to provide the Court

with non-conclusory explanations for its reasons for deeming any located records

non-responsive.

## B.     The USCIS's Search

Both parties seek partial summary judgment regarding the USCIS's search for records

responsive to Item 10 of the RCFP's request.  See Defs.' Mem. at 1, 8; Pls.' Mem. at 2, 18.  In

Item 10, the RCFP sought:

> All emails to, from, copying, or blind copying any email address ending in
> ".eop.gov", from January 1, 2017[,] to present, that contain "media" or "reporter"
> or "journalist" and any of the following terms or phrases:
>
>> [i.] "caravan"
>>
>> [ii.] "migrant caravan"
>>
>> [iii.] "southern border"
>>
>> [iv.] "Mexican border"
>>
>> [v.] "migrants"
>>
>> [vi.] "refugees[.]"

Defs.' Facts ¶ 4(j); see Pls.' Facts ¶ 4.j.  According to the USCIS, "[a]s agreed between the

parties, using a limited search scope," Eggleston Decl. ¶ 14, it searched the emails of ten

"custodians who comprise[d] senior leadership of [the] USCIS during the search timeframe[,]"

using the terms "[m]edia or reporter or journalist AND any of the following terms or phrases[:

c]aravan[, m]igrant caravan[, s]outhern border[,] Mexican border[, m]igrants[, r]efugees[,]" id.,

Ex. 1 (Letter from Jill A. Eggleston to Adam A. Marshall (Jan. 22, 2020) ("Jan. 22, 2020 USCIS

Letter")) at 2, ECF No. 26-2.  Through this search, it "located approximately 1,371 pages

[responsive to I]tem 10[.]"  Id. ¶ 14.  "Upon final review of the records located in response to

[I]tem 10," the "USCIS determined that the records were in fact not responsive to the subject of

the FOIA request."  Id. ¶ 17.  Specifically, "[t]he FOIA processor assigned to this matter did a

line[-]by[-]line review of the documents and determined that they did not reference the substance of the RCFP's request and overall inquiry regarding a Media Monitoring Services Database."  Id. ¶ 18.  Thereafter, the USCIS "provided [the plaintiff with] an index of document titles" to demonstrate that "the documents located have nothing to do with the types of records the FOIA request is seeking[.]"  Id.

The USCIS argues that it "acted within its discretion in designing and executing its search for records responsive to Item 10 of the RCFP['s r]equest and has fulfilled its obligations under [the] FOIA with respect to that item."  Defs.' Mem. at 8.  In response, the plaintiffs argue that "Item 10 of [the] RCFP's request seeks all electronic communications containing certain specified keywords within a specific timeframe; accordingly, any electronic communications meeting those criteria are, by definition, responsive."  Pls.' Mem. at 18.  For the following reasons, the Court concludes that it must deny the USCIS's motion for partial summary judgment and grant the plaintiffs' motion for partial summary judgment as to the USCIS's search for records responsive to Item 10 of the RCFP's request.

Similar to Item 9 of the RCFP's request, see supra Section III.A.1, Item 10 of the RCFP's request seeks a certain subset of emails—i.e., emails "to, from, copying, or blind copying any email address ending in '.eop.gov[,]'[] from January 1, 2017[,] to present"—that "contain" at least one word from each of two categories, i.e., either "media[,]" "reporter[,]" or "journalist" and either "caravan[,]" "migrant caravan[,]" "southern border[,]" "Mexican border[,]" "migrants[,]" or "refugees[.]"  Defs.' Facts ¶ 4(j).  Consequently, records are responsive if they (1) are "to, from, copying, or blind copying any email address ending in '.eop.gov[;]'" (2) are "from January 1, 2017[,] to present[;]" and (3) have at least one word from each of the two categories.  Id.  The USCIS used the precise terms listed in Item 10 to conduct an electronic

keyword search.[7]  See Eggleston Decl., Ex. 1 (Jan. 22, 2020 USCIS Letter) at 2.  Accordingly, if

the USCIS's search retrieved records containing the terms for which it searched, those records

would only be non-responsive to the extent that they did not meet all three of the criteria listed

above.  See Defs.' Facts ¶ 4(j) (listing the criteria).

However, the Eggleston Declaration does not provide an explanation of the USCIS's

determination that certain records were non-responsive sufficient to support such a conclusion.

See generally Eggleston Decl.  Instead, the only explanation provided by the USCIS is that its

"processor . . . determined that the[ records] did not reference the substance of the RCFP's

request and overall inquiry regarding a Media Monitoring Services Database."  Id. ¶ 18.  For

several reasons, this type of conclusory statement does not comply with an agency's obligation

to provide the Court with a "relatively detailed and non-conclusory" affidavit.  Defs. of Wildlife,

623 F. Supp. 2d at 87 (quoting SafeCard Servs., Inc., 926 F.2d at 1200).  First, Item 10 of the

RCFP's request—the only item at issue in the parties' motions—does not refer to a "Media

Monitoring Services Database[.]"  Compare Eggleston Decl ¶ 18 (referencing "the RCFP's . . .

overall inquiry regarding a Media Monitoring Services Database"), with Defs.' Facts ¶ 4(j)

(lacking any reference to the term "Media Monitoring Services Database" in Item 10).  Rather,

Item 10 seeks all emails that contain at least one word from each listed category.  See Defs.'

Facts ¶ 4(j).  Accordingly, to the extent that the USCIS deemed records non-responsive because

---

[7] Although the Eggleston Declaration does not provide any information regarding the method the USCIS used to conduct the search, see generally Eggleston Decl., it appears from the letter sent to the plaintiff by the USCIS on January 22, 2020, which is attached to the Eggleston Declaration, see id., Ex. 1 (Jan. 22, 2020 USCIS Letter) at 2, that the USCIS conducted an electronic keyword search for the terms listed in Item 10.  Compare id., Ex. 1 (Jan. 22, 2020 USCIS Letter) at 2 (stating that, in its search of ten "custodians who comprise senior leadership of USCIS during the search timeframe which was January 1, 2017[,] to January 17, 2020[,]" the USCIS "us[ed] the terms identified on the right" of the table depicted in the letter, i.e., "[m]edia or reporter or journalist AND any of the following terms or phrases[:] "Caravan[,]" "Migrant caravan[,]" "Southern border[,]" "Mexican border[,]" "Migrants[,]" and "Refugees"), with Defs.' Facts ¶ 4(j) (stating that the request from RCFP sought "[a]ll emails to, from, copying, or blind copying any email address ending in '.eop.gov[,]'[] from January 1, 2017 to present, that contain 'media' or 'reporter' or 'journalist' and any of the following terms or phrases: 'caravan,' 'migrant caravan,' 'southern border,' 'Mexican border,' 'migrants,' 'refugees'").

they "did not reference the . . . overall inquiry regarding a Media Monitoring Services Database[,]" Eggleston Decl. ¶ 18, it unreasonably interpreted the RCFP's request.  See Wilson, 730 F. Supp. 2d at 155 ("Agencies must read and interpret a FOIA request as it was drafted[.]").

Second, to the extent that the USCIS deemed records non-responsive because they "did not reference the substance of the RCFP's request[,]" Eggleston Decl. ¶ 18, the meaning of this statement is unclear based upon the Court's review of the Eggleston Declaration.  Although the Eggleston Declaration could be referring to a determination that the records did not contain at least one word from each of the two categories in Item 10 of the RCFP's request, it could also be referring to an unidentified topic that it deemed to be "the substance of the RCFP's request[.]" Id.  Again, this type of conclusory statement does not comply with an agency's obligation to provide the Court with a "relatively detailed and non-conclusory" affidavit, SafeCard Servs., Inc., 926 F.2d at 1200, because the statement lacks any detail regarding what the USCIS considered the "substance of the RCFP's request[,]" Eggleston Decl. ¶ 18.  Accordingly, the Court is without a basis to conclude that the USCIS complied with its FOIA obligations in deeming these records non-responsive and, thus, must deny the USCIS's motion for summary judgment and grant the plaintiffs' cross-motion for summary judgment as to the USCIS's search for records responsive to Item 10 of the RCFP's request.  Consequently, the USCIS must process the records consistent with the RCFP's Item 10 request.

## C.     The DHS's Search

Both parties seek partial summary judgment regarding the DHS's search for records responsive to Items 9, 10, 11, and 12 of the RCFP's request.  See Defs.' Mem. at 9–10; Pls.' Mem. at 20–21.  As discussed above, see supra Section I.B, Items 9 through 12 of the RCFP's request sought the following:

Item 9[: ]All emails, memoranda, or other forms of written or electronic communication, from January 1, 2017[,] to present, that mention or reference "ILU-OASISS-OMEGA" <u>and</u> "media" or "reporter" or "journalist[;]"[]

Item 10[: ]All emails to, from, copying, or blind copying any email address ending in ".eop.gov[,]"[] from January 1, 2017[,] to present, that contain "media" or "reporter" or "journalist" <u>and</u> any of the following terms or phrases: "caravan," "migrant caravan," "southern border," "Mexican border," "migrants," "refugees[;]"[]

Item 11[: ]All emails to, from, copying, or blind copying any email address ending in "fbi.gov[,]"[] from January 1, 2017[,] to present, that mention or refer to the application(s)/database(s) described in the NBC 7 article and accompanying screenshots/documents;[]

Item 12[: ]All emails, memoranda, or other forms of written or electronic communication, from January 1, 2017, to present, that include "media" or "reporter" or "journalist" <u>and</u> any of the following terms: "screening," "scrutiny," "searches," "secondary," "passport[.]"[]

Defs.' Facts ¶ 4(i)–(l) (brackets omitted).  "In order to identify the pool of documents potentially responsi[v]e to [the RCFP's] FOIA request, [the] DHS worked with [the p]laintiffs on the scope and terms used for the search."  Holzer Decl. ¶ 5.  "The search tasker included the following search terms[:]" (1) for "SEARCH 1: 'ILU-OASISS-OMEGA' and 'media' or 'reporter' or 'journalist;'" (2) for "SEARCH 2: 'media' or 'reporter' or 'journalist' and 'caravan' or 'migrant caravan' or 'southern border' or [']Mexican border' or 'migrants' or 'refugees[;]'" (3) for "SEARCH 3: 'application' or 'database' and 'NBC7' and 'screenshot[;]'" and (4) for "SEARCH 4: 'media' or 'reporters' or 'journalist' and 'screening' or 'scrutiny' or 'searches' or 'secondary' or 'passport.'"  <u>Id.</u>

"On February 24, 2020, [the] DHS completed its search and determined that the search did not locate any responsive records . . . after employing the [ ] three-step process [that the]

DHS uses to evaluate data returned from [ ] searches[,]"[8] which includes a "line[-]by[-]line review of the document to determine [ ] if the documents are in fact responsive to the request[.]" Id. ¶ 8.  Although the initial search for records "is necessarily broad to ensure that it pulls all 'hits' on the search terms used[, t]he computer program that conducts the search [ ] is unable to determine the context in which those terms are used within the documents."  Id. ¶ 10.  Consequently, the "searches return a hit on a document whenever any of the search terms are present, without regard to the context in which they appear or their proximity to one another." 2d Holzer Decl. ¶ 5; see id. ("[F]or example, if a document contained the words 'media' and 'secondary' it would register a hit, even if the context in which those words appeared was a message forwarding a media inquiry on secondary screening procedures, which would clearly not be responsive to the subject of [the p]laintiffs' requests.").  Accordingly, "[r]eviewing to determine whether or not the key[]word hits in the document actually relate to the subject of the underlying FOIA request requires a human being to review the documents and apply human reasoning to determine responsiveness."  Holzer Decl. ¶ 10.  Here, a DHS "FOIA analyst reviewed each document to identify the context in which the search terms appeared, and the nature and content of each document to determine whether those records were in fact responsive to the subject matter as stated in [the RCFP's] FOIA requests."  2d Holzer Decl. ¶ 7.  And,

---

[8] According to the DHS, its "Office of the Chief Information Officer [('OCIO')] [ ] conducts the searches" in the first instance.  Holzer Decl. ¶ 7.  Then, in the first stage of the three-step process, during which "the DHS Privacy Office only knows the file size of the universe of potentially responsive records . . . rather than the number of files/documents or page numbers[,]" the "OCIO uploads the data retrieved as a result of the search tasker to the DHS Privacy Office server[.]"  Id. ¶ 8.  In the second stage, "[t]he DHS Privacy Office [ ] uploads the data into FX's Advanced Document Review [ ], an application . . . that will de-duplicate files and allow FOIA staff to conduct a further review of the documents to identify potentially responsive records and eliminate clearly unresponsive records."  Id.  At this stage, "[t]he DHS Privacy Office is [ ] able to determine the actual number of documents that were uploaded into the system, how many files were duplicates, and whether any of the files failed to upload[,]" and can "determine the total number of files[.]"  Id.  Finally, at the third stage, "the DHS Privacy Office . . . conduct[s] a line-by-line review of the document to determine [(]1) if the documents are in fact responsive to the request, and [(]2) whether any portions of the documents are exempt from disclosure under the FOIA."  Id.  Following this third stage, "the DHS Privacy Office is able to provide a page count of responsive records or determine that none of the records located were in fact responsive."  Id.

according to the DHS, "[i]n this instance, none of the documents [that] the FOIA analyst reviewed were responsive to [the RCFP's] FOIA requests." Id.; see also Holzer Decl. ¶ 9 (stating that the DHS "determined that the data resulting from the [ ] search tasking[—]which included search terms and custodians as agreed[-]to by both parties[—]produced no records responsive to [the] RCFP['s] [ ] [r]equest").

 The defendants argue that the "DHS acted within its discretion in executing its search[,]" Defs.' Mem. at 10, when it "review[ed] the records returned by the search terms to determine whether they were actually responsive to the substance of the request[,]" id. at 9. In response, the plaintiffs argue that the DHS has failed to demonstrate that its search was adequate because, "notwithstanding that [the] DHS conducted a search for and located records that 'hit on the search terms' of [the] RCFP's request, it offers absolutely nothing to justify its 'non-responsive' determination." Pls.' Mem. at 21. The Court will first address Items 9, 10, and 12 of the RCFP's request, before proceeding to discuss Item 11.

### 1. Items 9, 10, and 12 of the RCFP's Request

 First, consistent with the Court's conclusions regarding the CBP's and the USCIS's determinations that records located during an electronic keyword search using the terms in Items 9 and 10 of the RCFP's request were non-responsive, see supra Sections III.A.1, III.B, the Court concludes that the DHS has failed to demonstrate that the records retrieved by its search did not meet the criteria in Items 9, 10, and 12.

 As discussed above, Items 9 and 10 set forth specific criteria for the records they seek. Regarding Item 9, responsive records (1) are emails, (2) dated "from January 1, 2017[,] to present[,]" (3) that contain both the word "ILU-OASISS-OMEGA" and one of the following three words: "media[,]" "reporter[,]" or "journalist[.]" Defs.' Facts ¶ 4(i). Regarding Item 10, responsive records (1) are "emails to, from, copying, or blind copying any email address ending

in '.eop.gov[,]'[]" (2) dated from "January 1, 2017[,] to present[,]" (3) that "contain" at least one word from each of the following two categories: either "media" or "reporter" or "journalist" <u>and</u> either "caravan," "migrant caravan," "southern border," "Mexican border," "migrants," or "refugees[.]" <u>Id.</u> ¶ 4(j).  Item 12 sets forth similarly clear criteria: responsive records must (1) be "emails, memoranda, or other forms of written or electronic communication[;]" (2) be dated "from January 1, 2017, to present[;]" and (3) "include" at least one word from each of the following two categories: either "media" or "reporters" or "journalist" <u>and</u> either "screening," "scrutiny," "searches," "secondary," or "passport[.]" <u>Id.</u> ¶ 4(l).

The Second Holzer Declaration states that the DHS determined that "none of the documents . . . were responsive" after a "FOIA analyst reviewed each document to identify the context in which the search terms appeared, and the nature and content of each document[.]" 2d Holzer Decl. ¶ 7.  To justify its determination regarding non-responsiveness, the DHS explains that its "searches return a hit on a document whenever any of the search terms are present, without regard to the context in which they appear or their proximity to one another." <u>Id.</u> ¶ 5.  However, the "context in which the search terms appeared[,]" <u>id.</u> ¶ 7, is irrelevant to the above requests, which merely seek records in which certain combinations of words or terms appear, <u>see</u> Defs.' Facts ¶¶ 4(i)–(j).  <u>Cf.</u> <u>Shapiro</u>, 170 F. Supp. 3d at 154 (When "the subject of Shapiro's request [wa]s the entirety of each document that mention[ed] Mandela, even if such references [we]re fleeting and tangential[,]" then a "record [would be] responsive if and only if it contain[ed] Mandela's name (or those of his three listed aliases) or any descriptor obviously referring to him." (emphasis omitted)).  Similarly, the "proximity" of one term to another term— so long as the record meets the criteria explained in the preceding paragraph—does not impact a record's responsiveness to the above requests because the requests do not specify that they seek

only records containing terms within a certain proximity to one another.  See Defs.' Facts

¶¶ 4(i)–(j).  The example offered by the Second Holzer Declaration illustrates the flaw in the

DHS's reasoning, as it would not necessarily consider a document responsive "if [the] document

contained the words 'media' and 'secondary[,]'" despite the fact that it actually would still be

responsive to Item 12, even if "the context in which those words appeared was a message

forwarding a media inquiry on secondary screening procedures[,]" 2d Hozer Decl. ¶ 5, so long as

the words "media" and "secondary" appeared on the document and the document was an

"email[], memorand[um], or other form[] of written or electronic communication," dated "from

January 1, 2017, to present[,]" Defs.' Facts ¶ 4(l).  Accordingly, the Court concludes that the

DHS has unreasonably construed Items 9, 10, and 12 of the RCFP's request, see Wilson, 730 F.

Supp. 2d at 155 ("Agencies must read and interpret a FOIA request as it was drafted[.]"), and

that the Court therefore must deny the DHS's motion for summary judgment and grant the

plaintiffs' motion for partial summary judgment as to the DHS's search for records responsive to

Items 9, 10, and 12.  Consequently, the DHS must process the records consistent with the

RCFP's Items 9, 10, and 12 requests.

### 2.  Item 11 of the RCFP's Request

Turning to Item 11, the Court concludes that the DHS has failed to provide an adequate

explanation of the reasons why it deemed the records pertinent to this request non-responsive.

Unlike Items 9, 10, and 12, Item 11 provides room for interpretation by the agency, as it seeks

emails "that mention or refer to the application(s)/database(s) described in the NBC 7 article and

accompanying screenshots/documents[,]" Defs.' Facts ¶ 4(k), rather than identifying specific

terms or phrases, see, e.g., id. ¶ 4(l) (seeking records "that include 'media' or 'reporter' or

'journalist' and . . . 'screening,' 'scrutiny,' 'searches,' 'secondary,' 'passport[]'" (emphasis in

original)).  In light of this greater level of ambiguity, the DHS's determination that such a request

requires an analyst to review the "context in which the search terms appeared[] and the nature and content of each document[,]" 2d Holzer Decl. ¶ 7, to determine whether the records "mention or refer" to the specific "application(s)/database(s)[,]" Defs.' Facts ¶ 4(k), is reasonable.

However, although Item 11 does not seek records in which certain phrases appear, see id., the DHS provides only a cursory statement that "none of the documents [that] the FOIA analyst reviewed were responsive to [the RCFP's] FOIA requests[,]" 2d Holzer Decl. ¶ 7, with no further explanation as to why the documents were not responsive, see generally Holzer Decl.; 2d Holzer Decl.  Absent a "non-conclusory justification for each ultimate classification as non-responsive[,]" Shapiro, 944 F.3d at 943, the Court cannot grant summary judgment to the DHS as to the adequacy of its search for records responsive to Item 11 of the RCFP's request. Accordingly, the Court will deny without prejudice both the DHS's motion for summary judgment and the plaintiffs' cross-motion for partial summary judgment as to the DHS's search for records responsive to Item 11 of the RCFP's request.  If, taking into consideration the Court's rulings in this Memorandum Opinion, the DHS can provide the Court with a non-conclusory explanation of its reasons for deeming the records located during the search for Item 11 non-responsive, it may renew its motion for summary judgment on that ground.  If the DHS is unable to do so in a manner that is consistent with the Court's rulings, it must deem the records responsive and process them.  The DHS may not again seek summary judgment regarding this issue unless it (1) properly construes the plaintiffs' requests in accordance with the Court's rulings; (2) reviews the records located by its search for their responsiveness to the plaintiffs' requests; and (3) is able to provide the Court with non-conclusory explanations for its reasons for deeming any located records non-responsive.

**D.      The Defendants' Arguments**

In response to the plaintiffs' challenges to the adequacy of the defendants' searches and responsiveness review, the defendants argue that their searches were adequate because (1) they "w[ere] not required to use the precise terms outlined in either" NBC 7's or the RCFP's requests, Defs.' Mem. at 7; see id. at 8, 9; (2) "determining responsiveness is part of the 'search' under [the] FOIA[,]" id. at 7; see id. at 8, 9, and (3)

> many of the records that hit on searches comprising the terms from [the p]laintiff[s'] requests either (a) did not actually contain the required terms due to the operation of agency search tools or (b) did not pertain to the overall substance of [the p]laintiff[s'] requests (information related to a purported database of reporters associated with a  migrant caravan)[,]

Defs.' Reply at 6.  For the following reasons, the Court concludes that the defendants' arguments are unavailing.

First, although the defendants are correct that "there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request[,]" Phys. for Hum. Rts. v. U.S. Dep't of Def., 675 F. Supp. 2d 149, 164 (D.D.C. 2009), the defendants' use of search terms is not at issue in the parties' motions currently before the Court, see generally Defs.' Mot.; Pls.' Mot.  Rather, the pertinent question, as phrased by the defendants themselves, is whether the defendants complied with their obligations under the FOIA when they "determin[ed] that records identified as potentially responsive to various items in the [plaintiffs'] FOIA requests after hitting on various search terms were not, in fact, responsive to the requests[,]" Defs.' Mem. at 2, i.e., whether the defendants' responsiveness review following their use of the search terms was compliant with the FOIA.

Second, the defendants are also correct that "determining responsiveness is part of the 'search' under [the] FOIA[.]"  Id. at 7.  However, again, the plaintiffs do not challenge the

agency's general ability to determine that records located during a search are responsive before processing them.  See generally Pls.' Mem.; Pls.' Reply.  Rather, the plaintiffs challenge the defendants' particular determinations as to the responsiveness of records located in this case given the nature of their requests, see, e.g., Pls.' Mem. at 1 (arguing that the "RCFP's requests sought, in part, records from a specified time frame containing specific words or phrases" and the "[d]efendants searched for and located records exactly matching the descriptions provided in [the] RCFP's requests[, y]et . . . inexplicably deemed them 'non-responsive'"), as well as the sufficiency of the defendants' explanations for their determinations, see, e.g., Pls.' Reply at 8 (arguing that the DHS did not offer a "non-conclusory justification for each ultimate classification as non-responsive" (emphasis in original)).

Throughout its briefing, the defendants repeatedly mischaracterize the issue before the Court, claiming that a ruling for the plaintiffs would "requir[e] FOIA respondents to release all records hitting on terms defined by requesters without granting those respondents the discretion to review the hits for substantive responsiveness[.]"  Defs.' Reply at 6.  However, as discussed above, see supra Sections III.A–C, the Court concludes that the defendants have (1) inappropriately deemed records non-responsive based on unreasonable interpretations of the specific requests in this case, and (2) failed to provide "relatively detailed and non-conclusory" declarations "[i]n order to establish the adequacy of [their] search[es.]"  SafeCard Servs., 926 F.2d at 1200.  Contrary to the defendants' position, neither of these rulings require agencies to per se release records responsive to an electronic keyword search without any further responsiveness review.[9]

---

[9] The defendants seemingly disregard the reality that just because a document is deemed responsive does not terminate the assessment of whether the document must be produced, as the agency can still avoid disclosure if one of the FOIA exemptions applies.  See generally 5 U.S.C. § 552(b).

Third and finally, the defendant argues that

> many of the records that hit on searches comprising the terms from [the p]laintiff[s'] requests either (a) did not actually contain the required terms due to the operation of agency search tools or (b) did not pertain to the overall substance of [the p]laintiff[s'] requests (information related to a purported database of reporters associated with a migrant caravan)[,]

Defs.' Reply at 6.  However, this generalized argument is unsupported by the declarations submitted to the Court.  As discussed above, see supra Sections III.A–C, none of the agency declarations demonstrate that they reasonably interpreted the plaintiffs' requests and provided more than conclusory statements regarding their non-responsiveness determinations.  See SafeCard Servs., 926 F.2d at 1200 ("[A]gency affidavits must be . . . relatively detailed and non-conclusory" (internal quotation marks omitted)).  Furthermore, as noted repeatedly, Items 9, 10, and 12 of the RCFP's request sought records containing specific words.  See Defs.' Facts ¶¶ 4(i), (j), (l).  None of these requests narrowed the requested records by seeking only those records "related to a purported database of reporters associated with a migrant caravan[,]" Defs.' Reply at 6.  See Defs.' Facts ¶¶ 4(i), (j), (l).  Therefore, any determination that the records responsive to the keywords in those requests "did not pertain to the overall substance of [the p]laintiff[s'] requests[,]" because the "information related to a purported database of reporters associated with a migrant caravan[,]" Defs.' Reply at 6, unreasonably reframed those requests.  See Nat'l Sec. Couns., 931 F. Supp. 2d at 101 (agencies are "bound to read [a FOIA request] as drafted[,] not as agency officials . . . might wish it was drafted" (internal quotation marks omitted)).

Consequently, and for the reasons discussed above, the Court must deny in part and deny without prejudice in part the defendants' motion and must grant in part and deny without prejudice in part the plaintiffs' cross-motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court must deny in part and deny without prejudice in part the defendants' motion and must grant in part and deny without prejudice in part the plaintiffs' cross-motion.  The defendants' motion is denied to the extent that it seeks summary judgment regarding Items 9, 10, and 12 of the RCFP's request.  The defendants' motion is denied without prejudice to the extent that it seeks summary judgment regarding Item 11 of the RCFP's request and Items 3 and 4 of NBC 7's request.  The plaintiffs' cross-motion is granted to the extent that it seeks summary judgment regarding Items 9, 10, and 12 of the RCFP's request and denied without prejudice in all other respects.

**SO ORDERED** this 20th day of December, 2022.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.